22404. DAVIS *v.* NATIONAL CITY BANK OF ROME.

DECIDED DECEMBER 23, 1932.

*M. B. Eubanks,* for plaintiff in error.

*Wright & Covington,* contra.

JENKINS, P. J.   Whether or not the payee of a negotiable promissory note may be a holder in due course under the negotiable-instruments law, is a question upon which the courts of the country are in serious conflict.   As one writer suggests, however, in most of the situations involved in the cases sustaining a recovery on the theory that the payee was a holder in due course, the general law might have sustained a recovery.   Professor Brannan and Professor Beutel, in their excellent work entitled "Brannan's Negotiable Instruments Law" (5th ed.), have presented a strong, exhaustive, and strenuous argument in favor of the affirmative side of the question.   They take the position that most of the courts of the country have assumed this attitude.   An examination of the authorities as compiled by them, however, would seem to indicate a somewhat contrary view, unless the cases analyzed, criticized, and sought to be distinguished by them, should be ignored, or taken as in support of the position which they so ably champion.   Some of the courts appear to have followed the reasoning outlined by Professor Brannan, in the first edition of that work, but there seems to be a general disinclination on the part of the courts of this country, including Federal courts, and of the English courts, including their highest tribunal, to hold that under the terms of the negotiable-instruments law the payee of a negotiable instrument can be treated as a holder in due course.   See case note in Jones *v.* Waring & Gillow,

196

decided by the English House of Lords, reported in 68 A. L. R. 944. As also tending to the negative conclusion, see case notes in 15 A. L. R. 437; 21 A. L. R. 1365; 26 A. L. R. 769; 32 A. L. R. 289, and the numerous cases there listed. See also, as setting forth both lines of authorities, 5 Uniform Laws Annotated, 213.

An executed and delivered negotiable note is a promise to pay whoever may in good faith, and for a consideration, acquire it before maturity. Negotiable Instruments Law, § 52. A negotiable note being akin to currency itself, the only duty of a bona fide purchaser for value before maturity of such a note is to know that the instrument is genuine. Otherwise, as a holder in due course, he is protected. See Negotiable Instruments Law, § 57. Section 191 of the negotiable-instruments law of this State declares that "holder means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof." Code (Michie, 1926), § 4294 (191), (Park's Supp. 1926) § 4285 (2). This perfectly clear and sound definition is greatly stressed by those holding the affirmative of the proposition. But, while the payee of such a note is the holder until it is negotiated, it seems manifest that "holder" and "holder in due course" are not interchangeable terms, and do not designate persons who necessarily stand upon the same footing. Section 58 of the negotiable-instruments law itself plainly distinguishes the two, and differentiates their respective rights, when it provides that "in the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable." The difference which may exist between a holder and a holder in due course is what constitutes the essence of the superior rights of a bona fide purchaser for value before maturity of a negotiable instrument, as first recognized by the rules of the law merchant, and now formulated by the negotiable-instruments law. While it is true that the language of section 59 of the negotiable-instruments law provides that "every holder is deemed prima facie to be a holder in due course," this surely can not reasonably be interpreted to mean that the holder of a negotiable instrument made payable to himself is presumed to have acquired the same by negotiation from a third person in due course of trade. That a holder in due course is one who has taken the instrument by *negotiation* seems to be expressly and unmistakably indicated by section 52(4) of the act itself, which stipulates as one of the necessary

prerequisites to be a holder in due course that he must have so taken it—"that at the time it was *negotiated* to him he had no notice of any infirmity in the instrument, or defect in the title of the person *negotiating* it." (Italics ours.) In other words, it appears to us that the whole tenor and effect of the negotiable-instruments law is not to confer the powerful special rights and privileges of the highly favored holder in due course upon the payee, who constitutes one of the original and necessary parties to the instrument (see in this connection *Quin* v. *Sterne, 26 Ga.* 223 (3), 71 Am. D. 204), but to confer such benefits only upon one who acquires it in due course of trade by delivery from the bearer, if payable to bearer, or by indorsement from the payee or some subsequent indorsee when payable to the order of a designated person.

The negotiable-instruments law defines for itself what constitutes negotiation. Section 30 of the act is as follows: "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer, it is negotiated by delivery; if payable to order, it is negotiated by the indorsement of the holder, completed by delivery." Stress is laid by the learned writers of the text in Brannan's Negotiable Instruments Law (5th ed.) upon the general statement made by the first sentence of this section, whereas the full and complete interpretation thereof, as explicitly set forth in the second sentence, seems to be minimized or more or less ignored. As we understand it, the only note which can be negotiated by mere delivery is one expressly made payable, or which has become payable, to *bearer*. Our own Supreme Court, in *Fourth National Bank* v. *Lattimore,* 168 *Ga.* 547, 550 (148 S. E. 396), in construing section 51 of the negotiable-instruments law, speaks as follows: "Under the code section cited, no one can be a holder in due course of an instrument payable to a named payee or order, without the indorsement of the payee," giving citations. We are, therefore, unable to follow what we interpret to be the reasoning embodied in the text-book mentioned, to the effect that a negotiable instrument payable to a designated person can be negotiated by an intermediary to the payee by mere manual delivery, the theory and argument being that since § 30 of the act does not specifically prescribe that the negotiator must be a holder, even a thief can abstract from the maker a completed negotiable note and proceed to

"transfer" it by delivery to the payee therein named, so as to vest in him the powerful rights and privileges of a holder in due course. An intermediary in possession of a note payable to the order of a person other than himself, although he might have an equity therein, is incapable of negotiating it, even to the payee designated by the instrument. Under the authority of *Fourth National Bank* v. *Lattimore,* supra, the payee alone is capable of negotiating it, and until he has done so it is not in circulation. Until it is in circulation, there is no place or warrant for one to be called a holder in due course. If the custody of any such intermediary is authorized and legal, that is, if he be the agent of the maker to deliver it, or the agent of the payee to receive it, or if he himself has an equity in the note, not being the payee, he is incapable of negotiating it, but the most he can do towards putting it in circulation is to deliver it to the payee named in the instrument, who alone is authorized to negotiate it.

The text-book argument referred to seems also to run counter to section 16 of the act, which is as follows: "Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument. But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed. And where the instrument is no longer in possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved." Our Supreme Court held, in one of the cases cited (26 *Ga.* 223 (3), supra) : "There are but two original parties to promissory notes— makers and payees—and so long as the papers remain in the hands of the payee, the idea of an indorsement is excluded." We might add that the idea of indorsement or negotiation is not only excluded while the note remains in the hands of the payee, but that such is equally true prior to the time it reaches his hands by

delivery. The text-book authority we have been considering (Brannan's Negotiable Instruments Law (5th ed.), 496), argues, however, that section 16 requiring delivery as between immediate parties, and even as to remote parties except holders in due course, does not affect their conclusion, their reasoning being as follows: "This result is not prevented by the first clause of sec. 16 which requires a delivery as between immediate parties, and as regards a remote party other than a holder in due course. Was plaintiff an immediate party? No, because 'immediate parties' excludes a holder in due course. 'Immediate parties' means parties who are immediate to the conditions or limitations placed on the delivery in the sense of knowing or being chargeable with notice of them." As we see it, the payee of a note is not only an immediate party, but a necessary immediate party, without whom a promissory note is utterly lacking in vitality. *Quin* v. *Sterne,* supra. Is it not somewhat in the nature of begging the question to say that the payee is not an immediate party because such construction would be to exclude a holder in due course, when the very point and the only point at issue is whether the payee is or can be a holder in due course? Accordingly, although the question is not without difficulty, and there is high authority both ways, as we see it the very fitness of things, as well as the general tenor and special provisions of the statute, forbids that the payee of a note, as one of the immediate and necessary parties thereto, should be clothed with all the rights, powers, and privileges of one who in due course of trade purchases it in good faith and for value. The payee knows when he sees proper to take it that the instrument is made payable directly to himself as one of the original necessary parties. On the face of it there are but two parties, the maker and himself. An intermediate indorsement to some person other than the payee would be futile and would manifestly fail to make such person a holder in due course. Likewise, any intermediate indorsement to the payee, would be a patent nullity. If this be true, why should a mere manual delivery to the payee of a note not capable of negotiation by delivery amount to anything more?

*Judgment reversed. Sutton, J., concurs. Stephens, J., concurs specially.*